IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT H. AYLOR, JR., On Behalf Of Himself and All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. _____ |
| XYBERNAUT CORPORATION, EDWARD G. NEWMAN, STEVEN A. NEWMAN, M.D., and THOMAS D. DAVIS, | ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

## CLASS ACTION COMPLAINT
## FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff, by his undersigned attorneys, by way of this Complaint, alleges the following, upon

personal knowledge as to himself and his acts and as to all other matters, upon information and belief,

based upon, *inter alia*, the investigation made by and through his attorneys, including a review of the

public filings of Xybernaut Corporation ("Xybernaut" or "the Company") with the United States

Securities & Exchange Commission ("SEC"), as well as certain published reports and news articles.

## PARTIES

1.     Plaintiff, Robert H. Aylor, Jr., as set forth in his attached Certification, which is

incorporated herein by reference, is a resident of McMinn County, Tennessee, purchased shares of

Xybernaut common stock in the open market between March 27, 2003 and April 8, 2005, inclusive

(the "Class Period"), and suffered damages as a result of those purchases.

2.     Defendant, Xybernaut, is a Delaware corporation, with its principal executive offices and headquarters located at 12701 Fair Lakes Circle, Fairfax, Virginia.

3.     Defendant, Edward G. Newman ("E. Newman"), at all times relevant hereto, was the Company's Chief Executive Officer ("CEO") and Chairman of the Board of Directors ("the Board").

4.     Defendant, Steven A. Newman, M.D. ("S. Newman"), at all times relevant hereto, was the Company's President and Chief Operating Officer ("COO"), and Vice Chairman of the Board.

5.     Defendant, Thomas D. Davis ("Davis"), was the Company's Chief Financial Officer ("CFO") and Senior Vice President from on or about November 14, 2002 through November 17, 2004.

6.     Defendants, E. Newman, S Newman, and Davis are referred to collectively herein as the "Individual Defendants."

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter of this action under the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78aa, and 28 U.S.C. §1331. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), as well as Rule 10b-5, 17 CFR § 240.10b-5, as promulgated by the SEC.

8.     Venue is proper in this district pursuant to the provisions of the Exchange Act and 28 U.S.C. § 1391(b). Xybernaut is a Delaware Corporation that maintains a registered office or agent in this judicial district.

9.     In connection with the acts, conduct and violations of law detailed in this Complaint, Defendants, at all relevant times, directly and indirectly, utilized the means and instrumentalities of

interstate commerce, including the mails, telephone communications and the facilities of the national securities exchanges.

## BACKGROUND

10.    This is a securities class action brought on behalf of all persons, other than the Defendants and related parties, who purchased or otherwise acquired shares of Xybernaut common stock and other securities in the open market during the Class Period (the "Class").

11.    Xybernaut was founded in 1990 by Defendant, E. Newman, and completed its initial public offering on July 18, 1996. Until the Nasdaq Stock Market ("Nasdaq") announced its intention to delist the Company's stock as of April 14, 2005, it was traded on the Nasdaq under the symbol "XYBR."

12.    As described in the Company's annual report for fiscal year 2002 (ended December 31, 2002), which was filed with the SEC on Form 10-K on March 28, 2003 (the "2002 10-K"), Xybernaut is engaged in, *inter alia*, "the research, development, manufacture, marketing and sales of mobile, wearable computing and communication systems." The Company also offers service-type software through its wholly-owned subsidiary, Xybernaut Solutions, Inc. ("XSI"), as well as hardware-type products through its wholly-owned foreign subsidiaries, Xybernaut K.K. (Japan) and Xybernaut GmbH (Germany).

13.    Xybernaut's primary product consists of the Mobile Assistant® series, the most current versions of which are the Mobile Assistant V ("MA V") and the Mobile Assistant TC ("MA TC"). According to the 2002 10-K, "[s]ince its commercial introduction in 1995, the Company has recognized revenue of approximately $19,500,000 on sales of approximately 4,000 units of the MA

series." In addition, Xybernaut "derives its revenues from sales of its wearable computers, software

products and consulting services." In 2002, Xybernaut introduced the Atigo™ product line, a family of

wireless web panels that can be used either as stand-alone handheld personal computers or as displays

for an MA system, a laptop, or a conventional PC.

14.     As described in the July 18, 2001 issue of The New York Times, the MA V is a

wearable computer, which can attach to a belt, weighs approximately 22 ounces, and is about the size

of a Sony Walkman. The basic model costs about $4000 and is designed for use by government

agencies, the military, the transportation sector, and any line of work that requires free hands and a high

degree of field workforce automation.

15.     Emphasizing increased revenues and a reduction in operating expenses, Xybernaut

issued a press release on November 14, 2002 regarding its financial results for the third quarter of fiscal

year 2002. The press release stated as follows:

> Xybernaut® Corporation (Nasdaq:XYBR) today announced quarterly
> revenues of $2.5 million for its third quarter ended September 30,
> 2002. This represents an increase of approximately 26% from
> revenues during the preceding second quarter of 2002 and an increase
> of approximately 10% over revenues during the comparable third
> quarter of 2001. The net loss for the third quarter was $7.9 million, or
> $0.10 per share, compared with $8.1 million, or $0.15 per share, for
> the same period in the prior year.
> Operating expenses, excluding restructuring and other non-recurring
> charges, for the third quarter of 2002 were $6.0 million, a reduction of
> 41% from the fourth quarter of 2001 and 14% from the preceding
> second quarter of 2002.
> Revenue for the nine months ended September 30, 2002 was $7.4
> million, representing an increase of 11% versus revenue of $6.6 million
> for the same period a year ago. The Company reported net losses of
> $22.5 million for both the first nine months of 2002 and 2001.
> "Throughout 2002, Xybernaut has successfully introduced new product

lines, gained traction in critical industry segments, extended the Team Xybernaut(TM) partner community, strengthened our intellectual property position and demonstrated our ability to raise capital despite difficult market conditions," stated Edward G. Newman, chairman, president and CEO.

"We continue our drive to profitability and see significant benefits from the restructuring and cost cutting initiatives we have undertaken throughout 2002," continued Newman. "We expect to reduce our operating expenses by 50% over prior levels. We have significantly reduced our headcount, restructured agreements with vendors and partners, reduced inventory commitments and implemented various other cost saving strategies such as consolidating international operations."

16.     In addition to the financial results, the November 14th press release also announced the

promotion of Defendant Davis from the Company's vice president of finance and controller to the

position of CFO, and the change of Davis' predecessor, John F. Moynahan, to executive vice

president, international operations.  The press release further stated as follows:

"Tom has done an excellent job of maintaining a strong focus on cost management. His business and financial acumen and proven leadership abilities will serve the Company well as he moves into his new role," said Newman. "Tom has my utmost confidence as our new CFO and it is a pleasure to promote him to this position. Additionally, we are fortunate to have John's continued financial guidance during the transition period." Davis has over 10 years of finance and accounting experience and has served as controller and vice president of finance since joining Xybernaut in 1999. Prior to Xybernaut, Davis held various senior finance and accounting positions, including director of finance at MeriStar Hospitality Corporation. While with MeriStar, Davis was active in the company's 1996 initial public offering, and played a key role in raising $3 billion through debt and equity instruments. Davis also served as a senior auditor and certified public accountant (CPA) with Deloitte & Touche. Davis graduated magna cum laude from James Madison University.

17.    On January 6, 2003, the Company issued a press release containing the New Year's

message of Defendant, E. Newman, to Xybernaut's shareholders and supporters.  Commenting on the

Company's "record" backlog and continued reduction in expenses, Defendant, E. Newman, assured

readers that the Company was focused on reaching profitability.  The press release further stated:

> First, unlike many other technology companies large and small,
> Xybernaut is growing and has maintained its leadership position despite
> difficult market conditions. ...  We are focused on reaching profitability
> and recognize that to do so we must not only grow revenues but also
> operate as a much more streamlined company.  We have significantly
> reduced expenses and successfully consolidated many functional areas.
> ... The Atigo(TM) product family demonstrates our success in
> streamlining product development and delivery to the point where final
> shipment (and subsequent revenue recognition) of customized systems
> can be less than 120 days from purchase order receipt. ...  In summary,
> we made tangible progress on many fronts in 2002.  I hope the above
> glimpse of some of these developments gives you a better perspective
> of the Company as it enters the New Year.

## MATERIALLY FALSE AND MISLEADING STATEMENTS
## DURING THE CLASS PERIOD

18.    The Class Period begins on March 27, 2003, with the Company's announcement of its

financial results of the fourth quarter and fiscal year 2002.  Before the opening of trading that day, the

Company issued a press release, which stated as follows:

> Total revenues for 2002 were $10.0 million, a 2% increase over 2001.
> These results include a 17% increase in 2002 hardware revenues to
> $6.1 million.  Total revenues for the fourth quarter ended December
> 31, 2002 were $2.6 million, representing an increase of approximately
> 2% over revenues during the third quarter of 2002.  Net operating
> expenses for the fourth quarter of 2002 were $4.5 million, a reduction
> of 56% from the fourth quarter of 2001 and 26% from the third quarter
> of 2002. ...  Net loss for 2002 decreased 17% from $32.2 million, or
> $0.63 per share, for 2001 to $26.6 million, or $0.37 per share, for
> 2002.

-6-

"Xybernaut continues to achieve considerable success despite challenging market conditions," stated Edward G. Newman, chairman, president and CEO. ... "We have reorganized our management structure and strengthened our corporate governance through the appointment of two new independent directors to our board ..." added Newman. "I am very pleased to announce that Xybernaut has surpassed our previously stated targets related to reductions in operating expenses, as evidenced by the 56% decline in net operating expenses for the fourth quarter of 2002 over the comparable 2001 period," stated Tom Davis, senior vice president and CFO. "Additionally, we have recently been successful in eliminating a considerable amount of long-term liabilities and commitments relating to both product and inventory."

19.    In response to this news, almost 2 million shares were traded on March 27, 2003,

more than double that of the previous trading day's trading volume. The Company's share price closed

down at $0.37 per share.

20.    On March 28, 2003, Xybernaut's 2002 10-K, signed by the Individual Defendants,

was filed with the SEC. It reiterated the financial information contained in the March 27th press release.

21.    On April 2, 2003, Xybernaut issued a press release, announcing that it had "raised $6.1

million through a $2.0 million private placement of common stock with institutional investors, a long-

term borrowing of $1.75 million and exercises of approximately $2.4 million of previously issued

warrants." Defendant, E. Newman, was quoted as saying that the Company's "recent 2002 results

emphasize [that] the Company is achieving considerable accomplishments while utilizing far fewer

resources."

22.    On April 3, 2003, the trading volume was over 4.8 million, more than double that of the

previous day. The Company's share price, which had traded as high as $0.45, closed up at $0.42 per

share.

23.    On May 1, 2003, Xybernaut announced that Defendant, E. Newman, was relinquishing

some of his management responsibilities to his older brother, S. Newman.  The press release stated that

S. Newman had been elevated to the Company's President and CEO, and that Defendant, E.

Newman, would remain as CEO and Chairman of the Board.

24.    On May 15, 2003, Xybernaut announced its financial results for the first quarter of

fiscal year 2003.  The press release stated as follows:

> Total revenues for the three months ended March 31, 2003 were $1.8
> million, a 36% decrease from the comparable period in 2002. Total
> operating expenses for the first quarter of 2003 were $4.2 million, a
> reduction of 52% from the first quarter of 2002 and 59% from the
> fourth quarter of 2001.  As a result of the Company's cost cutting
> initiatives, the net loss for the first quarter of 2003 decreased 33% to
> $5.4 million, or $0.04 per share, from $8.0 million, or $0.13 per share,
> in the first quarter of 2002.  "While we are not pleased with the revenue
> results for the first quarter, we were able to significantly reduce both
> operating expenses and net loss," said Steven A. Newman, president.
> "These significant accomplishments were the result of a combination of
> factors including reductions in headcount and other cost-cutting efforts."
> Newman, who was recently named Company president, pointed out
> that in the first quarter the Company revamped its direct and channel
> sales strategy and initiated changes that he believes will lay the
> foundation for increasing revenue.  "Our revenue results were impacted
> by orders that were delayed in the first quarter, a sluggish economy and
> a continued slowdown in technology spending.  Nonetheless, I take
> complete responsibility for our results and I am resolved to both
> significantly grow revenues and increase shareholder value," he added.
> ... Edward G. Newman, chairman and CEO added, "We continue to
> see significant benefits from our restructuring and cost cutting efforts,
> surpassing our stated goal to reduce operating expenses by 50% over
> prior levels, and we expect the second quarter to be one of our best
> ever."

25.    On May 15, 2003, in response to the Company's earnings announcement, trading

volume was over 4.5 million, and the price per share closed at $0.41 per share.

26.    That day, the Company filed its financial results for the first quarter of fiscal year 2003

with the SEC on Form 10-Q, which was signed by the Individual Defendants.  It reiterated the financial

information contained in the May 15th press release.

27.    On June 19, 2003, Xybernaut announced the completion of financing valued at

approximately $7.75 million through private stock placements and the exercise of warrants.  The

Company's press release quoted Defendant, E. Newman, as saying: "This financing strengthens our

cash position and will allow us to aggressively pursue new business opportunities and partnerships [as

well as] financing for product development, focused sales and marketing initiatives and debt reduction.

When combined with our recent reductions of operating expenses, the completion of this financing

allows the company to focus on near term milestones and long term growth."

28.    On July 9, 2003, Xybernaut issued a press release regarding its expected financial

results for the second quarter of fiscal year 2003, ended June 30, 2003.  The Company predicted

revenue would "increase more than 50% compared to revenue for the first quarter of 2003 [and] would

be the highest quarterly percentage increase since the Company's acquisition of Xybernaut Solutions

Inc. in 2000." The press release further stated as follows:

> "These results reinforce our previous expectations that the second
> quarter would be a pivotal quarter in setting the stage for the
> Company's future," said Steven A. Newman, president of Xybernaut
> Corporation. "Based on what we have seen in the second quarter and
> the first few days of the third quarter, we anticipate increased
> momentum and success through 2003 and beyond." Newman noted
> that this optimism is based on the objective measurement of numerous
> strategic Company initiatives including: cost-cutting programs; beneficial
> financings; intellectual property licensing strategies; strategic
> partnerships and the securing of key accounts in the transportation,
> retail, military and homeland security sectors.

-9-

29.     In response to this announcement, the price of Xybernaut stock traded as high as $0.76 per share before closing at $0.71 per share, an increase of $0.14. Trading volume was extraordinarily heavy, exceeding 33 million shares.

30.     On August 11, 2003, Xybernaut announced its financial results for the second quarter of fiscal year 2003, ended on June 30, 2003. Total revenue was reported as $2.8 million, or "a 56% increase from the preceding first quarter of 2003, and a 38% increase from the comparable period in 2002." S. Newman was quoted as stating that "[t]he Company is moving in the right direction in virtually all areas," and Defendant Davis stated that "[w]e have continued our cost cutting efforts into 2003 [and] streamlined operations."

31.     On this news, trading volume in the Company's stock approached 20 million, well above the previous day's volume. Xybernaut stock traded as high as $0.90 per share, before closing at $0.80 per share.

32.     On August 13, 2003, the Company filed its financial results for the second quarter of fiscal year 2003 with the SEC on Form 10-Q, which was signed by the Individual Defendants. It reiterated the financial information contained in the August 11th press release.

33.     On September 10, 2003, Xybernaut announced that it had been awarded a contract worth $1.62 million by the U.S. Department of Defense. On that day, the Company's stock closed at $1.25, up $0.10 per share, on trading volume in excess of 51 million shares. Early the next week, on September 15, 2003, the Company announced a $510,000 hardware contract with the U.S. Department of Defense. Trading volume that day was over 33 million shares, and the Company's stock price closed at $1.60 per share.

34.    On September 18, 2003, CBS.MarketWatch reported that the share price of Xybernaut stock had reached a new 52-week high. According to this report:

> Shares of Xybernaut stretched recent gains on Thursday, pushing to a new 52-week high that has the stock up more than 100 percent in a mere four sessions. The Fairfax, Va., maker of wearable computer technology saw intense buying in its stock with 37 million shares changing hands in less than three hours of trading. News issued Wednesday that the company would unveil a new product Thursday during a presentation at the DEMOmobile 2003 Conference has sustained recent interest. ... The rally actually began in earnest on Sept. 10 when Xybernaut disclosed a $1.6 million order from the Department of Defense. The stock has moved higher in five of the six sessions since that announcement. In recent trading, shares changed hands at $2.54, up 62 cents, on the day, or 32 percent. The peak for the session stands at $2.66, a far cry from the issue's dark days last October when it plummeted to a low of 19 cents. On August 11, Xybernaut posted a loss of $3.3 million, or 2 cents per share, on revenue of $2.8 million for the second quarter ended June 30. This performance represented a marked improvement from its loss of $6.7 million, or 10 cents per share, on revenue of $2 million in the same period a year earlier.

35.    On September 29, 2003, Xybernaut announced the completion of a private stock placement with institutional investors for approximately $7 million, which gave the Company approximately $13 million in cash. According to Defendant Davis, this was Xybernaut's "strongest financial position since the initial public offering." This press release further stated as follows:

> "We've seen positive results in recent quarters from our sales, marketing and business development efforts; we've introduced new and innovative products; we've secured important patents while aggressively protecting our intellectual property; and we are involved in numerous business ventures with key partners," said Edward G. Newman, Xybernaut chairman and CEO. "By taking advantage of this opportunity to strengthen our capital structure, Xybernaut is in a better position than ever to extend our recent positive momentum and continue to deliver the results that our customers and stakeholders deserve."

-11-

36.    On November 13, 2003, the Company announced its financial results for the third quarter of fiscal year 2003, ended September 30, 2003. The Company emphasized increased revenues ($2.7 million, six percent greater from the third quarter of fiscal year 2002), record cash and equity balances (as of September 30, 2003, the Company had no debt and "record stockholders' equity of over $17 million"), and the seventh consecutive quarter of decline in "net operating expenses." Defendant Davis was quoted as saying that he continued "to believe that we have the strongest financial position since our IPO," and E. Newman was quoted as stating that the Company's "future has never looked brighter."

37.    In response to this news, Xybernaut stock traded as high as $2.23 per share, before closing at $1.99 per share that day. Volume was heavy at 16.5 million shares.

38.    On November 13, 2003, the Company filed its financial results for the third quarter of fiscal year 2003 with the SEC on Form 10-Q, which was signed by the Individual Defendants. It reiterated the financial information contained in the November 13th press release.

39.    On January 8, 2004, Xybernaut announced that it expected its financial results for the fourth quarter and full fiscal year 2003 to be at "record levels." In the Company's press release, Defendant, E. Newman, was quoted as follows:

> "I stated earlier that I was very optimistic about our Q4 results and I view today's announcement as just the latest validation of the many strategic initiatives we have undertaken. Management firmly believes that the best is yet to come and we expect to extend the positive momentum the Company is currently experiencing."

40.    On March 9, 2004, Xybernaut announced its financial results for fiscal year 2003, which emphasized that "record revenues," "solid financial position" and "international momentum" underscored the "strongest year" in the Company's history.  The press release further stated as follows:

> The Company recorded its highest quarterly revenue ever during the fourth quarter of 2003. Revenue for the quarter ended December 31, 2003 was $3.7 million, a 43% increase over the fourth quarter of 2002 and a 38% increase over the third quarter of 2003. Total revenue for the full year 2003 increased 10% to $11.0 million, compared to $10.0 million for 2002. These year-end results include the highest levels of both product and consulting services revenues in the Company's history.  The Company's net loss for the fourth quarter of 2003 was $5.3 million compared to a loss of $4.0 million in the comparable quarter of the prior year. The net loss for the entire year ended December 31, 2003 was $18.6 million compared to a loss of $26.6 million for 2002.  At December 31, 2003, the Company had no long-term debt, cash of $9.5 million and stockholders' equity of $15.9 million.  "The management and staff at Xybernaut have never been more focused," said Edward G. Newman, chairman and CEO of Xybernaut. ..."[M]anagement continues to be optimistic and encouraged by the prospects for 2004 and beyond."

41.    That day, the trading volume was over 7 million shares, more than twice that of the previous day.  The Company's share price traded as high as $1.78 per share, before closing down at $1.58 per share.

42.    On March 12, 2004, the Company filed its financial results for the fourth quarter and fiscal year 2003 with the SEC on Form 10-K, which was signed by the Individual Defendants.  It reiterated the financial information contained in the March 9th press release.

43.    On May 4, 2004, Xybernaut announced its financial results for the first quarter of fiscal year 2004, ended March 31, 2004.  The press release stated that "total revenue for the first quarter ...

was $4.4 million, a 146% increase over the comparable 2003 period." The press release continued as

follows:

> This represents the Company's second consecutive quarter of record
> revenue. Last quarter, the period ended December 31, 2003, the
> Company reported revenue of $3.7 million, a 43% increase in revenue
> over the fourth quarter of 2002. As of the end of the first quarter
> 2004, the Company had no long-term debt, cash of $12.5 million and
> record stockholders' equity of $18.3 million.
> "We are pleased to announce back-to-back quarters with record
> revenue and strong year-to-year revenue growth," said Edward G.
> Newman, chairman and CEO of Xybernaut. ... "With low expenses
> and our losses decreasing, I continue to remain optimistic and positive
> about our prospects for the remainder of 2004 and thereafter,"
> continued Newman.

44.     Trading in the Company's stock that day exceeded 3.5 million shares. The share price

closed at $1.26 per share, a decline of $0.02 from the opening price.

45.     On May 7, 2004, the Company filed its financial results for the first quarter of fiscal

year 2004 with the SEC on Form 10-Q, which was signed by the Individual Defendants. It reiterated

the financial information contained in the May 4th press release.

46.     On June 28, 2004, Xybernaut announced that it had been included into the Russell

3000 index and the small-cap Russell 2000 index. Defendant, E. Newman, was quoted as follows:

"Being recognized for inclusion in the Russell 3000 and 2000 Indexes marks a significant milestone in

our efforts to refocus the Company and also affords us the opportunity to build an even larger

institutional following for Xybernaut common stock."

47.     On August 5, 2004, Xybernaut announced its financial results for the second quarter of

fiscal year 2004, ended June 30, 2004. The Company's press release stated that "[t]otal revenue for

the second quarter of 2004 was $3.4 million, a 21% increase from the comparable 2003 period [and] [t]otal revenue for the six months ended June 30, 2004 was $7.8 million, a 70% increase" from the same period in 2003. Defendant, E. Newman, was quoted as stating that "[w]ith revenues up 70%, the value of our intellectual property now being validated and having just come off the Company's strongest three quarters ever, I am confident that we are not only on the right track but also that our growth in many areas will now be sharply accelerating as we move forward." The price per share of the Company's stock closed at $1.30, down $0.05 from the opening. Volume was just under 1.5 million.

48.     On August 6, 2004, the Company filed its financial results for the second quarter of fiscal year 2004 with the SEC on Form 10-Q, which was signed by the Individual Defendants. It reiterated the financial information contained in the August 5th press release.

49.     On November 9, 2004, Xybernaut announced its financial results for the third quarter of fiscal year 2004, ended September 30, 2004. According to the Company's press release, "[t]otal revenue for the third quarter of 2004 was $3.2 million, a 20% increase from the comparable 2003 period [and] [t]otal revenue for the nine months ended September 30, 2004 was $11.0 million, a 51% increase from the nine months ended September 30, 2003." Defendant, E. Newman, was quoted as follows: "We are well on our way to our most successful year ever. ... This top-line growth is the direct result of our continued and successful efforts to bring in new and larger customers while still maintaining our focus on existing partners. ... I firmly believe that we are poised to continue to deliver positive results through the rest of 2004, 2005 and beyond."

50.     On this news, the price per share of Xybernaut stock traded as high as $1.23, before closing at $1.14. Volume exceeded 4 million shares.

51.     On November 9, 2004, the Company filed its financial results for the third quarter of fiscal year 2004 with the SEC on Form 10-Q, which was signed by the Individual Defendants. It reiterated the financial information contained in the November 9th press release.

52.     On December 16, 2004, with the Company's stock trading as high as $1.40 per share, Xybernaut issued a press release regarding its annual shareholders meeting. The press release quoted Defendant, E. Newman, as follows: "2004 continues to be a banner year for the company as we anticipate continued success moving forward. Our efforts remain focused on enhancing both near and long-term shareholder value."

### THE TRUTH BEGINS TO EMERGE

53.     Starting on February 15, 2005, trading prices for Xybernaut common stock began to decline. That day, the share price closed below $1.00 for the first time since September, 2003. The next day, February 16, 2005, trading was unusually heavy – over 8 million shares – and the share price never reached $1.00 a share. On February 17, 2005, Xybernaut issued a press release regarding the drop in the trading price of the Company's shares, and stated "that it knows of no business reason or financial condition that would explain the decline in its stock price." The volume of trading activity lessened on this news, but the share price still declined, closing at $0.92 per share.

54.     On March 14, 2005, Xybernaut announced that it was seeking an extension of time within which to file its annual report with the SEC. The press release stated that the Company "expects to complete and file its Annual Report on Form 10-K by the March 31, 2005 extension date."

55.    On March 31, 2005, after the close of trading, Xybernaut belatedly revealed that it was

in dire financial and regulatory straits.  The Company issued a press release that day, which stated as

follows:

> Xybernaut Corporation (NASDAQ:XYBR) announced today that the
> filing of its Form 10-K and other related reports for the year ended
> December 31, 2004, anticipated to occur today, will be further
> delayed, pending completion of an internal investigation undertaken by
> its Audit Committee.  On February 28th, the Audit Committee engaged
> independent counsel - Alston & Bird LLP - to assist it in conducting an
> **internal investigation of,** among other things, concerns brought to the
> Audit Committee's attention relating to **the internal control
> environment of the Company, the propriety of certain
> expenditures and the documentation of certain expenses of the
> Chairman and CEO of the Company, the Company's
> transparency and public disclosure process, the accuracy of
> certain public disclosures, management's conduct in response to
> the investigation, and the propriety of certain major transactions.**
> The Audit Committee's investigation is continuing, and the filing of the
> Company's 10-K will await the conclusions of that investigation.  At
> this time, the Company is unable to predict when its 10-K will be filed.
> On February 1, 2005, the Company received a subpoena from the
> Northeast Regional Office of the Securities and Exchange Commission,
> seeking documents and other information relating to the sale of
> Company securities by any person identified as a selling shareholder in
> any Company registration statement or other public filing.
>
> As a result of the delayed filing of its Form 10-K, the Company will
> lose its status to file registration statements on form S-3, which has
> historically been utilized to expedite the registration of common stock
> issued in connection with the Company's financings. The loss of the
> right to use form S-3 could have a material impact on the ability of the
> Company to raise additional funds in the future, and therefore affect its
> ability to meet its obligations as they come due.
>
> Management is still in [the] process of completing the Sarbanes-Oxley
> 404 internal control testing for the year ended December 31, 2004.
> However, certain material weaknesses currently have been identified
> related to the control environment and control activities as it relates to

the Company's policies and procedures in the expense reimbursement process, revenue recognition related to certain product sales, and monitoring of business risks. Management continues to evaluate the identified issues and is addressing remediation plans to be implemented. Xybernaut also announced unaudited results for the year end December 31, 2004 in addition to 4th quarter results. Revenues for 2004 were approximately $13.9 million, with a net loss of approximately $19.7 million. Revenues for the 4th quarter were approximately $2.9 million, with a net loss of approximately $7.2 million. These unaudited results do not include possible further adjustments, including but not limited to, the matters discussed above.

On March 30, 2005 the Company received notice from the NASDAQ Stock Market that the bid price of the Company's common stock has closed below the minimum $1.00 per share requirement for the stock's continued listing under Marketplace Rule 4310(c)(4) (the "Rule"). Therefore, the Company has until September 26, 2005 to become compliant. (Emphasis added.)

56.    On this news, the Company's share price was decimated. After closing at $0.42 per share the previous day, on April 1, 2005, the price per share dropped almost by half, to close at $0.24. Over 33 million shares were traded, which was the highest volume in over a year.

57.    On April 8, 2005, after the close of trading, Xybernaut announced that investors could not rely on any of its financial statements for the entire Class Period. Specifically, the press release stated as follows:

Xybernaut® Corporation (NASDAQ:XYBRE) announced today that **investors and others should refrain from relying upon the Company's historical financial statements**, together with the related audit reports the Company received from its outside auditors, Grant Thornton LLP, **for the years ended December 31, 2002 and 2003, and interim quarterly reports for the quarters ended March 31, 2003, June 30, 2003, September 30, 2003, March 31, 2004, June 30, 2004 and September 30, 2004.** The Company's action was taken in response to a letter which the Company received from Grant Thornton LLP, on April 6, 2005, indicating that the nature of the items disclosed by the Company in its Form 8-K filed on April 1, 2005, and

the uncertainties surrounding the results of the ongoing Audit Committee investigation disclosed in such Form 8-K, have caused the firm to question the accuracy and reliability of the Company's accounting and related disclosures provided in the specified prior period financial statements. The Audit Committee has reviewed the Company's disclosure in this press release and in the Company's related Form 8-K with Grant Thornton LLP.

Upon completion of the Audit Committee's investigation, the Company intends promptly to implement any recommendations resulting from the Audit Committee's investigation and to take any other actions necessary to satisfy the concerns raised by Grant Thornton LLP. The Company has retained Kalorama Partners, LLC, a consulting firm founded by former SEC Chairman Harvey Pitt, to assist the Company in fulfilling these commitments.
The Company also announced today that on April 5, 2005, it received notice from The Nasdaq Stock Market of Nasdaq's intent to delist the Company's securities at the opening of business on April 14, 2005, subject to the Company's right to request a hearing with the Nasdaq Listing Qualifications Panel in accordance with the Marketplace Rule 4800 Series. In the notice, Nasdaq asserted that the Company is in violation of Nasdaq Marketplace Rule 4310(c)(14) because, as the Company previously announced, it has not yet filed its Annual Report on Form 10-K with Nasdaq and the SEC. (Emphasis added.)

58.    On this news, trading was again heavy. Volume on April 11, 2005 was over 15 million shares. The Company's price per share, which had opened at $0.14 – down $0.05 per share from the previous trading day's close – ended the day at $0.13 per share.

59.    As disclosed by Xybernaut in paragraphs 55 and 57, the Defendants' statements regarding Xybernaut's financial conditions, as set forth in the foregoing paragraphs (including paragraphs 18, 20-21, 24, 26, 28, 30, 32, 35-36, 38-40, 42-43, 45, 47-49, and 51-52), were false and misleading when issued and Defendants either directly issued these statements or acquiesced to

these misrepresentations by sitting idly by while they were in possession of material information that specifically contradicted these representations.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

60.    Plaintiff brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of himself and all other persons who purchased or otherwise acquired Xybernaut common stock and/or other securities during the Class Period (*i.e.*, between March 27, 2003 and April 8, 2005, inclusive). Excluded from the Class are Xybernaut, its subsidiaries and affiliates, the Individual Defendants, members of the immediate families of each of the Individual Defendants, any entities in which any of the Defendants have a controlling interest, and the legal representatives, heirs, successors, predecessors in interest, affiliates or assigns of any of the Defendants.

61.    This action may properly be maintained as a class action as a result of the following facts:

a.    During the Class Period, hundreds of thousands of shares of Xybernaut's common stock were issued and outstanding and were actively traded on the Nasdaq, a liquid, efficient and impersonal trading market. The members of the Class for whose benefit this action is brought are located throughout the United States, and are so numerous that joinder of all members of the putative Class is impracticable. Hundreds of thousands of Xybernaut shares were publicly traded during the Class Period and, upon information and belief, there are hundreds or thousands of members of the Class;

b.    Plaintiff's claims are typical of the claims of the other members of the Class, and Plaintiff and all members of the Class sustained damages as a result of the Defendants' wrongful conduct complained of herein;

c.    Plaintiff is a representative party who will fairly and adequately protect the interests of the other members of the Class, and has retained counsel competent and experienced in class action securities litigation. Plaintiff has no interests antagonistic to, or in conflict with, the Class he seeks to represent;

d.    A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted herein, because joinder of all members is impracticable. Furthermore, because the damages suffered by the individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for the Class members to separately redress the wrongs done to them. The likelihood of individual Class members prosecuting separate claims is remote;

e.    Plaintiff anticipates no unusual difficulties in the management of this action as a class action; and

f.    The questions of law and fact common to the members of the Class predominate over any questions affecting any individual members of the Class.

62.    The questions of law and fact which are common to the Class include, among others:

a.    Whether the federal securities laws were violated by the Defendants' acts as alleged in this Complaint;

-21-

b.    Whether the documents, press releases, reports and/or statements disseminated to the investing public and to Xybernaut shareholders during the Class Period omitted or misrepresented material facts about the financial condition, business prospects, and revenue expectations of Xybernaut;

c.    Whether Defendants failed to correct previously issued statements that they knew to be false or they recklessly disregarded the truth or falsity of such statements;

d.    Whether Defendants failed to disclose material, adverse information at a time when they were in possession of such information;

e.    Whether the Defendants acted with knowledge or reckless disregard for the truth in misrepresenting and omitting material facts;

f.    Whether, during the Class Period, the market price of Xybernaut common stock and other securities was artificially inflated due to the material misrepresentations and omissions complained of herein;

g.    Whether the Defendants participated in and pursued the common course of conduct complained of herein; and

h.    Whether the members of the Class have sustained damages and, if so, what is the proper measure thereof.

## FRAUD-ON-THE-MARKET DOCTRINE

63.    Plaintiff relies, in part, upon the presumption of reliance established by the fraud-on-market doctrine. The market for Xybernaut common stock was, at all pertinent times, a liquid and efficient market for, *inter alia*, the following reasons:

-22-

a.      Xybernaut met the requirements for listing, and was listed on the Nasdaq, a highly efficient and liquid market;

b.      As a regulated issuer, Xybernaut filed periodic public reports with the SEC;

c.      Xybernaut's securities trading volume was substantial during the Class Period;

d.      Xybernaut was covered by various securities analysts, who wrote reports which were available through various automated data retrieval services;

e.      Xybernaut disseminated information on a market-wide basis through various electronic media services, and participated in open conference calls with stock analysts and investors; and

f.      The market price of Xybernaut securities reacted rapidly to new information entering the market.

64.    The facts identified above reflect the existence of an efficient market for trading of Xybernaut securities and make applicable the fraud-on-the-market doctrine.  Similarly, Plaintiff and the other members of the Class are entitled to a presumption of reliance with respect to the misstatements and omissions alleged in this Complaint.

## DEFENDANTS' DUTIES AND MISCONDUCT

65.    As officers, directors and/or controlling persons of a publicly-held company whose common stock is registered with the SEC under the Exchange Act, traded on the Nasdaq at all pertinent times, and governed by the provisions of the Exchange Act, the Individual Defendants had a duty to disseminate accurate and truthful information in a timely manner with respect to Xybernaut's operations, finances, financial condition, revenues, income, earnings and present and future business

-23-

prospects, to correct any previously issued statements from any source that had become untrue, and to disclose any trends that would materially affect earnings and the present and future financial operating results of Xybernaut, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information.

66.     During the Class Period, each of the Individual Defendants was a senior executive and/or director of the Company and was privy to confidential and proprietary information concerning Xybernaut, its operations, finances, financial condition, revenues, income, earnings and present and future business prospects and regularly received reports regarding the same. As a result of their possession of such information, each of the Individual Defendants knew or recklessly disregarded the fact that Xybernaut had materially overstated the quality of its financial condition during the Class Period and had not disclosed critical information to the investing public which would have revealed that the Company's prior statements were materially misleading and false. As a result of their Board memberships and/or executive and managerial positions with Xybernaut, each of the Individual Defendants had access to adverse non-public information about the Company's operations, finances, financial condition, products, revenues, expenses and earnings via access to internal corporate documents, conversations and connections with other corporate officers and employees, and via reports and other information provided to them in connection with the performance of their duties. In light of their possession of such information, each of the Individual Defendants knew or recklessly disregarded the fact that the reported and expected financial results of Xybernaut were materially overstated during the Class Period.

-24-

67.    The Individual Defendants, as a result of their positions of control and authority as officers and/or directors of the Company, were able to and did control the contents of the various quarterly reports, SEC filings, press releases and presentations to securities analysts pertaining to the Company. Each of the Individual Defendants was provided with copies of Xybernaut's management reports, press releases and SEC filings alleged in this Complaint to be misleading prior to, or shortly after, their issuance, and had the ability and opportunity to prevent their issuance or cause them to be corrected. As a result, each of the Individual Defendants is responsible for the accuracy of the challenged public reports and releases as "group published" information and is, therefore, responsible and liable for the representations contained in those statements.

68.    Each of the Individual Defendants is liable as a direct participant in, and a co-conspirator with respect to, the wrongs complained of in this Complaint. In addition, the Individual Defendants, by reason of their status as officers and/or directors of Xybernaut, had access to material, non-public information, were "controlling persons" within the meaning of Section 20 of the Exchange Act, and had the power and influence to cause the Company to engage in the unlawful conduct complained of in this Complaint. As a result of their positions of control, each of the Individual Defendants were able to and did, directly or indirectly, control the conduct of Xybernaut's business, the information contained in its filings with the SEC and public statements about its business.

69.    During the Class Period, Defendants, individually and in concert, directly and indirectly, engaged and participated in a continuous course of conduct to misrepresent the results of Xybernaut's operations, and to conceal adverse material information regarding the financial condition and results Xybernaut's operations as specified in this Complaint. Defendants employed devices, schemes, and

artifices to defraud, and engaged in acts, practices, and the course of conduct described herein in an

effort to increase and maintain an artificially high market price for Xybernaut common stock and other

securities. This included the formulation, making and/or participation in the making of untrue statements

of material facts, and the failure to state material facts necessary in order to make the statements made,

in light of the circumstances under which they were made, not misleading, which operated as a fraud

and deceit upon Plaintiff and the other members of the Class.

COUNT I

VIOLATION OF SECTION 10(b) OF THE<br>SECURITIES EXCHANGE ACT AND RULE 10b-5 THEREUNDER

70.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set

forth herein at length.

71.    Throughout the Class Period, Defendants, singly and in concert, directly or indirectly,

engaged in a common plan, scheme and course of conduct described herein, pursuant to which they

knowingly or recklessly engaged in acts, transactions, practices and a course of conduct which

operated as a fraud upon Plaintiff and the other members of the Class; made various false statements of

material facts and omitted material facts to make the statements made not misleading to Plaintiff and the

other members of the Class, and employed manipulative or deceptive devices and contrivances in

connection with the purchase and sale of Xybernaut common stock and other securities.

72.    The Individual Defendants, as executive officers and/or directors of Xybernaut, had

actual knowledge of the falsity of the material statements set forth above, and intended to deceive

Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the

truth by failing to ascertain and disclose the true facts in the statements made by them or other

-26-

Xybernaut personnel to the SEC and the investing public, including Plaintiff and other members of the Class.

73.    The facts alleged herein compel a strong inference that the Defendants made material false and misleading statements to the investing public with scienter, in that the Defendants knew that the public statements issued or disseminated in the name of the Company were materially false and misleading; knew or recklessly disregarded that such statements would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements as primary violators of the federal securities laws.

74.    As a result of the foregoing, the market price of Xybernaut securities was artificially inflated during the Class Period. In ignorance of the falsity of the reports and statements, and the deceptive and manipulative devices and contrivances employed by the Defendants, Plaintiff and the other members of the Class reasonably relied, to their detriment, on the reports and statements described above and/or the integrity of the market price of Xybernaut securities during the Class Period in purchasing the Company's securities at prices which were artificially inflated as a result of the Defendants' false and misleading statements.

75.    Had Plaintiff and the other members of the Class known of the material adverse information which the Defendants failed to disclose and/or misrepresented, they would not have purchased Xybernaut securities at the artificially inflated prices that they did.

76.    Defendants' dissemination of this false and misleading material information, and their failure to disclose material information that rendered their other statements false and misleading, served

-27-

only to harm Plaintiff and the other members of the Class who purchased Xybernaut securities, in

ignorance of the financial risk to them as a result of such false and misleading information.

77.    As a direct and proximate result of the wrongful conduct alleged herein, Plaintiff and

other members of the Class have suffered damages in an amount to be established at trial.

78.    By reason of the foregoing, Defendants have violated Section 10(b) of the Exchange

Act and Rule 10b-5 promulgated thereunder and are liable to Plaintiff and the other members of the

Class for the substantial damages which they suffered in connection with their purchase of Xybernaut

securities during the Class Period.

COUNT II

VIOLATION OF SECTION 20(a)<br>OF THE SECURITIES EXCHANGE ACT

79.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if set

forth herein at length.

80.    During the Class Period, each of the Individual Defendants, by virtue of his office or

offices at, and/or directorship of Xybernaut and his specific acts, was a controlling person of the

Company within the meaning of Section 20(a) of the Exchange Act.

81.    Each of the Individual Defendants' positions made them privy to, and provided them

with actual knowledge of, the material facts that Xybernaut misrepresented and/or concealed from

Plaintiff and the other members of the Class during the Class Period.

82.    Each of the Individual Defendants had the power and influence, and exercised the

same, to cause Xybernaut to engage in the unlawful conduct and practices complained of herein by

causing the Company to disseminate the false and misleading information identified above.

-28-

83. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

84. By virtue of the conduct described above, Defendants are liable to Plaintiff and the other members of the Class for the substantial damages that they have suffered in connection with their purchase of Xybernaut common stock and other securities during the Class Period.

WHEREFORE, Plaintiff, on behalf of himself and the other members of the Class, demands judgment against Defendants as follows:

a. Determining that this action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b. Certifying Plaintiff as the Class Representative and his counsel as Lead Class Counsel;

c. Declaring and determining that the Defendants violated the federal securities laws by reason of their conduct as alleged herein;

d. Awarding monetary damages against all of the Defendants;

e. Awarding Plaintiff the costs, expenses, and disbursements incurred in prosecuting this action, including reasonable attorneys' fees and other recoverable expenses of litigation; and

f. Awarding Plaintiff and the other members of the Class such other and further relief as the Court may deem appropriate and just under all of the circumstances.

<u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury in this action for all claims against all Defendants.

ROSENTHAL, MONHAIT, GROSS
& GODDESS, P.A.

Jessica Zeldin (Del. Bar No. 3558)
Suite 1401, 919 Market Street
P.O. Box 1070
Wilmington, Delaware 19899
(302) 656-4433
jzeldin@rmgglaw.com
Counsel for Plaintiff

OF COUNSEL:

James E. Miller
Patrick A. Klingman
Karen M. Leser
SHEPHERD, FINKELMAN, MILLER & SHAH, LLC
65 Main Street
Chester, Connecticut 06412
(860) 526-1100

Scott R. Shepherd
James C. Shah
SHEPHERD, FINKELMAN, MILLER & SHAH, LLC
35 East State Street
Media, Pennsylvania 19063
(610) 891-9880

Jack Landskroner
Paul Grieco
LANDSKRONER • GRIECO • MADDEN, LTD.
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
(216) 522-9000

-30-

Andrew M. Schatz
Jeffrey S. Nobel
SCHATZ & NOBEL, P.C.
One Corporate Center
20 Church Street
Hartford, Connecticut  06103
(860) 493-6292

April 15, 2005

## CERTIFICATION PURSUANT TO FEDERAL SECURITIES LAWS

Robert H. Aylor, Jr.,("Plaintiff"), certifies as follows:

1.      Plaintiff has reviewed the Complaint and retains Shepherd, Finkelman, Miller & Shah, LLC ("SFMS") to institute and/or pursue such action on a contingent fee basis pursuant to the terms of the accompanying Retainer Agreement.

2.      Plaintiff did not purchase the securities that are the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.      Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary. Plaintiff represents that he/she/it fully understands this Certification and the accompanying Retainer Agreement and is duly authorized to execute this Certification.

4.      All of Plaintiff's transaction(s) in the Xybernaut Corp. ("XYBR") debt or equity securities that are the subject of this action during the Class Period (between March 27, 2003 and April 8, 2005 inclusive) is/are listed below:

| No. of Shares | Buy/Sell | Date | Price Per Share |
|---|---|---|---|
| 1400 | Buy | 6/28/04 | $ 1.69 |
| 600 | Buy | 6/28/04 | $ 1.6899 |
| 1192 | Buy | 3/08/05 | $ 0.84 |
| 6808 | Buy | 3/08/05 | $ 0.83 |
| 10,000 | Buy | 3/14/05 | $ 0.59 |
| 20,000 | Sell | 4/01/05 | $ 0.18 |

5.      During the three years prior to the date of this Certification, Plaintiff has never served, nor sought to serve, as a representative party in a federal securities class action except as listed below: None.

6.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _14th_ day of _April_____, 2005, at _Athens, IN_____ (city, state).

_Robert H. Aylor Jr_
Print Name

_Robert H Aylor Jr_
Signature

_PO Box 1432, Athens, TN 37371-1432_
Mailing Address

_423-744-9015_
Telephone Number

_rhaylorjr @ yahoo. Com_
E-Mail Address