1

Westlaw.

Not Reported in F.Supp.　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1
1997 WL 118429 (M.D.Fla.), 10 Fla. L. Weekly Fed. D 646
(Cite as: 1997 WL 118429 (M.D.Fla.))

▷

**Motions, Pleadings and Filings**

United States District Court,
M.D. Florida,

Tampa Division.

Matthew FISCHLER, Plaintiff,
v.
AMSOUTH BANCORPORATION, AmSouth
Bank of Florida, N.A., AmSouth Bank of Alabama,
N.A., AmSouth Investment Services, Inc.,
Defendants.
No. 96-1567-Civ-T-17A.

Feb. 6, 1997.

Jonathan L. Alpert, Patrick B. Calcutt, Alpert, Barker & Calcutt, P.A., Tampa, FL, Martin D. Chitwood, Christi C. Mobley, Appel, Chitwood & Harley, Atlanta, GA, Craig G. Harley, Appel, Chitwood & Harley, Atlanta, GA, for plaintiff.

G. Calvin Hayes, Frederick Stewart Schrils, Holland & Knight, Tampa, FL, James J. Restivo, Jr., Thomas L. Allen, Gregory B. Jordan, Reed, Smith, Shaw & McClay, Pittsburgh, PA, for defendants.

Judy S. Hoyer, James, Hoyer, Newcomer, P.A., Tampa, FL, for Vickie B. Smith.

Judy S. Hoyer, James, Hoyer, Newcomer, P.A., Tampa, FL, Alan Schulman, Jan M. Adler, Pamela M. Parker, Milberg, Weiss, Bershad, Hynes & Lerach, L.L.P., San Diego, CA, M. Clay Ragsdale, E. Ansel Strickland, Law Offices of M. Clay Ragsdale, Birmingham, AL, Steven E. Cauley, Law Offices of Steven E. Cauley, Little Rock, AR, for Louis D. Barge and Alice M. Barge.

ORDER

KOVACHEVICH, Chief Judge.

*1 This cause is before the Court on Motion for Appointment as Lead Plaintiff for Alabama Class Pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 and for Appointment of Lead Plaintiff's Co-Lead Counsel (Dkt.19) by Vickie B. Smith (Movant), and Plaintiff's response (Dkt.34).

*STANDARD OF REVIEW*
This motion is governed by the Securities Exchange Act of 1934, § 21D(a) (the Act), 15 U.S.C. § 78u-4(a), and Fed.R.Civ.P. 23. The Act provides that in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure," 15 U.S.C. § 78u-4(a)(1), the Court shall appoint a lead plaintiff. § 78u- 4(a)(3)(B)(I). The lead plaintiff shall be that member of the "plaintiff class the Court determines to be most capable of adequately representing the interests of the class members (the "most adequate plaintiff")." *Id.* The Court shall consider any timely motion for appointment as lead plaintiff by any member of the purported class. *Id.*

The Act creates a rebuttable presumption that the most adequate plaintiff is that person who "has either filed the complaint or made a motion in response to a notice," § 78u-4(a)(3)(B)(iii)(I)(aa), "has the largest financial interest in the relief sought," § 78u-4(a)(3)(B)(iii)(I)(bb), and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure," § 78u-4(a)(3)(B)(iii)(I)(cc). Any member of the purported plaintiff class may rebut the presumption upon proof the presumptive most adequate plaintiff "is subject to unique defenses," § 78u-4(a)(3)(B)(iii)(II)(bb), or "will not fairly and adequately protect the interests of the class," § 78u-4(a)(3)(B)(iii)(II)(aa). Discovery may be had on the issue only upon a showing of a reasonable

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                           Page 2
1997 WL 118429 (M.D.Fla.), 10 Fla. L. Weekly Fed. D 646
**(Cite as: 1997 WL 118429 (M.D.Fla.))**

basis for a finding the presumptive most adequate plaintiff cannot adequately represent the class. § 78u-4(a)(3)(B)(iv).

### DISCUSSION

The matters before the Court arise under provisions of the Private Securities Litigation Reform Act of 1995 (PSLRA), amending the Securities Exchange Act of 1934. Determination of this motion involves issues of first impression in this Court regarding the Act, which has been interpreted by few courts nationwide. The legislative history shows Congress enacted the PSLRA in response to perceived abuses of the class action procedure. H. Conf. Rep. No. 104-369, at 31 (1996), *reprinted in* 1995 U.S.C.C.A.N. 730 at 730. The lead plaintiff provisions are intended to encourage plaintiffs "to exercise supervision and control of the lawyers for the class," *Id.* at 32, 1995 U.S.C.C.A.N. at 731, instead of the opposite. Likewise, the most adequate plaintiff is to choose lead counsel, rather than the lawyers picking the plaintiffs. *Id.* at 35, 1995 U.S.C.C.A.N. at 734. While it is clear that determination of lead plaintiff and lead counsel are separate questions, *Id.*, 1995 U.S.C.C.A.N. at 734, common sense makes plain that, in most cases, these issues will be decided concurrently.

*2 Plaintiff brought this action in August, 1996, purporting to represent a class of persons who bought nondepository investment vehicles from Defendants. The putative class includes all those with claims arising from the disputed course of conduct by Defendants under federal securities laws and under the laws of four states, including Alabama. Plaintiff asserts he lost approximately $2,679.00 of his principal because of Defendants' alleged wrongful acts. Movant Smith asserts similar claims under Alabama securities laws, and states she lost more than $16,000 of principal. Movant notes the existence in Alabama state court of a putative class action asserting the same state law claims. While claiming to be a member of the Alabama class, Movant is not a named plaintiff in the state court action. Movant seeks appointment in this action as "Lead Plaintiff to represent the interests of all persons whose interests are already being represented in a prior class action pending in the State of Alabama, and [approval] of her selection of Co-Lead Counsel for those class members." Counsel for Movant also is counsel for named plaintiffs in the Alabama action.

Defendants filed a response neither consenting to nor opposing appointment of Movant as lead plaintiff. The plain language of the Act dictates only members of the plaintiff class may offer evidence to rebut the presumption in favor of the most adequate plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see Greebel v. FTP Software, Inc.,* 939 F.Supp. 57, 60-61 (D.Mass.1996). However, the Court notes the determination of lead plaintiff and lead counsel at this stage does not preclude revisiting the issue upon consideration of a motion for class certification. *Greebel,* 939 F.Supp. at 61.

Plaintiff opposes the Motion and seeks discovery relating to whether Movant is the most adequate plaintiff. Plaintiff filed the notice the Act contemplates August 21, 1996 (entry date August 22, 1996), and a corrected notice August 29, 1996 (entry date August 30, 1996). Movant filed her Motion on October 21, 1996. There is no dispute as to timeliness. Movant certified she filed in response to Plaintiff's notice. Plaintiff acknowledges that, at present, there is no dispute that Movant has the largest financial interest in the relief sought. The issues at hand are:

(a) whether Movant "otherwise satisfies" Rule 23 and thus is entitled to the (3)(B)(iii) presumption she is the most adequate plaintiff;

(b) whether Plaintiff has shown Movant either "will not fairly and adequately represent the interests of the class" or "is subject to unique defenses," thereby rebutting the presumption; and

(c) whether Plaintiff has demonstrated "a reasonable basis for a finding that the presumptively most adequate plaintiff is incapable of adequately representing the class" and therefore may seek discovery.

The manifest intent of the Act is determining the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3

1997 WL 118429 (M.D.Fla.), 10 Fla. L. Weekly Fed. D 646

**(Cite as: 1997 WL 118429 (M.D.Fla.))**

plaintiff most capable of pursuing the action and representing the interests of the class. H. Conf. Rep. No. 104-369, at 34 (1996), *reprinted in* 1995 U.S.C.C.A.N. 730 at 733. A wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification. This inquiry, therefore, focuses on the qualities of the class representatives enumerated in 23(a)(3) and 23(a)(4), that is, typicality and adequacy. Fed. Rule Civ. P. 23. The language of the Act envisions this delineation, which directs attention to "unique defenses" that may apply to a presumptive "most adequate" plaintiff and whether that plaintiff will "adequately represent" the class. The analysis inevitably comes down to the one question of whether Movant will fairly and adequately represent the interests of the class. The Court must determine whether Movant is entitled to the presumption, whether Plaintiff has rebutted that presumption, or whether Plaintiff demonstrated a reasonable basis for taking discovery.

*3 As to the existence of unique defenses against Movant, she has not joined the Alabama state court action as a named plaintiff, but asserts she is a member of the class. Her Motion and supporting documents, including the complaint in that action, therefore, may not indicate any potential unique defenses Defendants may have against her. Defendants' lack of opportunity to file an answer specifically contemplating Movant as a plaintiff adds uncertainty to this question.

Whether a named plaintiff will fairly and adequately represent the interests of the class is a question of fact for the district court. *Plummer v. Chemical Bank,* 668 F.2d 654, 659 (2d Cir.1982), citing *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1124 (5th Cir.1969). Judges should have access to and explore the facts sufficiently to make an intelligent determination of the matter. *Id.* The determination of fair and adequate representation rests on two bases: common interests between representative and the class and a willingness and ability to vigorously prosecute the action. *Gonzales v. Cassidy,* 474 F.2d 67, 72 (5th Cir.1973). Further, the named representatives must not possess interests antagonistic to those of the other class members. *Christiana Mortgage Corp. v. Del. Mortgage Bankers Ass'n,* 136 F.R.D. 372, 380 (D.Del.1991). Nor should the interests of named representatives and the class be such that there is likely to be a divergence of viewpoint or goals. *Mateo v. M/S Kiso,* 805 F.Supp. 761, 771 (N.D.Cal.1991). However, there need not be a complete absence of conflict. *Id.* at 772. Only conflict that is "serious and irreconcilable" will be fatal. *Id.* Finally, the purported representative "must demonstrate that she will vigorously prosecute the action, and plaintiff must provide both adequate financing and competent counsel." *Sandlin v. Shapiro & Fishman,* 168 F.R.D. 662, 668 (M.D.Fla.1996), *quoting Brooks v. Southern Bell Telephone & Telegraph Co.,* 133 F.R.D. 54, 56 (S.D.Fla.1990).

Assuming that Movant adopts the legal posture of the complaint in the state court action, she would be pressing claims only under Alabama law, and not the federal claims also included in this action. That alone does not necessarily indicate conflict. However, Movant states she "has come forward in order to ensure that the rights of the Alabama Class are not jeopardized." Memorandum of Points and Authorities in Support of Motion at 2 (Dkt.20). Movant further urges "[i]t makes eminent sense ... to have the claims of the Alabama Class prosecuted by Alabama plaintiffs in an Alabama court." *Id.* at 5. Plaintiff points out that an intent by Movant "to stay, divide, or sever portions of the class for disposition elsewhere," Plaintiff's Response to Motion at 3 (Dkt.34), raises the question of whether Movant's goals may be so divergent and in conflict with those of the class as to render her an inadequate representative. The analysis, as has been repeatedly pointed out, is hindered by the uncertainty of Movant's claims and defenses. The Act requires a plaintiff seeking discovery to demonstrate "a reasonable basis for a finding that the presumptively most adequate plaintiff" cannot adequately represent the class. The uncertainty of Movant's claims and the unanswered questions of Movant's intent, both raised by Plaintiff, are sufficient to meet that standard. Accordingly, it is

*4 ORDERED that the determination of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.      Page 4

1997 WL 118429 (M.D.Fla.), 10 Fla. L. Weekly Fed. D 646

**(Cite as: 1997 WL 118429 (M.D.Fla.))**

Motion of Vickie B. Smith for Appointment as Lead Plaintiff for Alabama Class be deferred, and Plaintiff may conduct expedited discovery as to whether Movant is the most adequate plaintiff. The parties shall advise the Court as to the proposed schedule for the discovery as soon as possible, but no later than ten days from the date of this Order.

1997 WL 118429 (M.D.Fla.), 10 Fla. L. Weekly Fed. D 646

**Motions, Pleadings and Filings (Back to top)**

- 8:96CV01567  (Docket)      (Aug. 12, 1996)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2



Slip Copy

Page 1

2004 WL 3314943 (N.D.Ohio)

(Cite as: 2004 WL 3314943 (N.D.Ohio))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Ohio, Eastern Division.
In re: THE GOODYEAR TIRE & RUBBER
COMPANY SECURITIES LITIGATION
No. 5:03 CV 2166.

May 12, 2004.
Jack Landskroner, Cleveland, OH, for Plaintiff.

Jack Morrison, Jr., Thomas R. Houlihan, Akron, OH, Jacob B. Radcliff, Jerome S. Hirsch, Jonathan Lerner, Lauren Aguiar, New York, NY, John T. Billick, Cleveland, OH, for Defendants.

MEMORANDUM OPINION & ORDER
[Resolving Docs. 13, 16, 17 in case # 5:03CV2166
and Doc. 12 in case
# 5:03CV2210]
I. Introduction

ADAMS, J.

*1 The above-captioned case is an action for securities fraud brought on behalf of shareholders of The Goodyear Tire & Rubber Company (the "Shareholders") against Defendants The Goodyear Tire & Rubber Company (Goodyear), Robert J. Keegan, Robert W. Tieken, Samir G. Gibara, Stephanie W. Bergeron, John W. Richardson, and Richard J. Kramer, (collectively referred to as "Defendants"). The Shareholders base their claims on violations of Section 10(b) of the Securities and Exchange Act of 1934, Section 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5, which was promulgated thereunder. The action was filed as a class action, excluding from the class Defendants, directors and officers of Goodyear, their families and affiliates.

On December 31, 2003, this Court entered an order consolidating all individual actions related to this matter. Shortly thereafter certain individual movants filed motions requesting appointment as lead plaintiff in the consolidated action. The first group of movants consists of the Alaska Electrical Pension Fund and the Central States, Southeast and Southwest Areas Pension Fund (the "Institutional Funds"). [FN1] The second group of movants consist of funds A57, C16 and NK1, which are part of the fund family managed by Capital Invest, die Kapitalanlagegesellschaft der Bank Austria Creditanstalt Gruppe GmbH, a fund management company located in Vienna, Austria (Capital Invest). [FN2] The last movant is Flamina Holdings, AG (Flamina Holdings.). [FN3] Flamina Holdings is a holding entity for two individual investors, Mr. Michael May and Ms. Christina May.

>FN1. ECF Doc. 16.

>FN2. ECF Doc. 17.

>FN3. Flamina's motion was filed as ECF Doc. 12 in case 5:03CV2210.

On February 10, 2004, the Court held a hearing at which time counsel for each of the proposed lead plaintiffs had an opportunity to present their arguments. Counsel for the Institutional Funds, Capital Invest and Flamina were present at the hearing. [FN4] The Court has reviewed the parties' motions, responses, and replies thereto. It has also fully considered the arguments presented at the hearing.

>FN4. The Court notes that a motion filed by movant Richard Berman is still pending on its docket. Mr. Berman was not represented by counsel at the hearing. Therefore, the Court deems his motion

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy																		Page 2
2004 WL 3314943 (N.D.Ohio)

(Cite as: 2004 WL 3314943 (N.D.Ohio))

withdrawn. Even if the Court seriously considered Mr. Berman's motion, however, it would not appoint him as lead plaintiff in this action. By Mr. Berman's own admission, he has lost only $54,730, which is much less than the losses the other movants allegedly suffered. (Berman, Mot. for Lead Plf. at 9).

## II. The Alleged Losses

The Institutional Funds request appointment as lead plaintiff based on their alleged loss of more than $3.7 million in connection with the purchase of over 188,000 shares of Goodyear securities between the time of October 13, 1998 and October 22, 2003 (the "Class Period"). The Institutional Funds also request approval of their selection of lead counsel, William S. Lerach and Tor Gronborg of Milberg, Weiss, Bershad, Hynes & Lerach LLP and Landskroner-Grieco, Ltd. as liaison counsel.

Likewise, Capital Invest requests appointment as lead plaintiff based on its loss of approximately $1.2 million in connection with its acquisition of 83,100 shares of Goodyear common stock during the class period. Capital Invest also requests approval of its selection of lead counsel the law firm of Bernstein, Litowitz, Berger & Grossman, LLP (Bernstein Litowitz) and the law firm Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., LPA (Climaco Lefkowitz) as liaison counsel.

*2 Flamina Holdings requests appointment as lead plaintiff based on its alleged loss of $2 million in connection with its acquisition of common stock and options. Flamina Holdings also requests approval of its selection of lead counsel the law firm of Scott & Scott and the law firm Tzangas, Plakas, Mannos, & Recupero as liaison counsel. However, Flamina Holdings' stated losses are based on its losses plus the losses of Goodyear Tireworkers Independent Unity of the USWA Local 307 Topeka (GTWIU), who no longer seeks appointment as lead plaintiff. GTWIU was originally a co-movant with Flamina Holdings. However, it subsequently withdrew from the motion. [FN5] At the hearing on this matter, Flamina Holdings represented that its loss alone was only $885,000.

> FN5. ECF Doc. 32, filed in case 5:03CV2166.

## III. Capital Invest is Appointed as Lead Plaintiff

The Private Securities Litigation Reform Act (PSLRA) sets forth the procedure that governs appointment of the lead plaintiff in actions arising under the Securities and Exchange Act of 1934 when such an action is brought as a class action under the Federal Rules of Civil Procedure. *See generally* 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i). This procedure first requires that the plaintiff who files the initial action, within 20 days of filing, publish a notice to the class informing the class members of their right to file a motion for appointment as lead plaintiff. *Id.* at § 78u-4(a)(3)(A)(I). [FN6]

> FN6. Here, the first notice of pendency was published over *The Business Wire* on October 23, 2003. Consistent with the PSLRA, the notice advised potential class members of the pendency of the action, the claims asserted therein, the purported class period, and that any member may, within 60 days from the date of the notice, move the Court to serve as lead plaintiff in the action. *Id.* at § 78u-4(a)(3)(A)(I).

The PSLRA also provides that within 90 days after publication of notice, the district court shall consider the class members' motions and shall appoint as lead plaintiff the member or members of the class that the Court determines most capable of adequately representing the interests of the class members. [FN7] *Id.* at § 78u-4(3)(B)(I). When making the determination of "most adequate plaintiff," the PSLRA states that:

> FN7. The Court acknowledges that this Order designating lead Plaintiff was not issued within 90 days after publication of notice. However, the Court was not able to comply with the 90-day provision in this case. Based on the Court's trial schedule it was not able to hold the hearing before

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 3
2004 WL 3314943 (N.D.Ohio)
**(Cite as: 2004 WL 3314943 (N.D.Ohio))**

expiration of the 90-day period. Accordingly, the Court did not have the requisite information on which to base its decision. *In re PRI Automation, Inc. Securities Litigation,* 145 F.Supp.2d 138, 144-45 (D.Mass.2001) (noting that compliance with the 90-day provision in some cases would require a district judge to make an uninformed decision and finding the 90-day provision to be an unconstitutional intrusion on judicial functions). Moreover, the Court needed time after the hearing to appropriately consider the parties' motions and focus on selecting the lead plaintiff and lead counsel best suited to adequately and fairly represent the interests of the plaintiff class in this case. *See id.*

[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under [the PSLRA] is the person or group of persons that -
(aa) has either filed the complaint or made a motion in response to a notice ...;
(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.
*Id.* § 78u-4 (3)(B)(iii)(I)(aa)-(cc). The above presumption may only be rebutted by proof that the presumptive lead plaintiff (1) will not fairly and adequately protect the interests of the class, or (2) is subject to "unique defenses" that render such plaintiff incapable of adequately representing to the class. <A HREF="http://www.westlaw.com/Find/Default.wl?rs=dfa1.0&vr=2.

3



Not Reported in F.Supp.2d                                                                 Page 1
2001 WL 861694 (C.D.Cal.), Fed. Sec. L. Rep. P 91,429
(Cite as: 2001 WL 861694 (C.D.Cal.))

**H**

**Motions, Pleadings and Filings**

United States District Court, C.D. California.
OSHER
v.
GUESS?, INC., et al.
No. CV01-00871LGB(RNBX).

April 26, 2001.
Seth Alben Aronson, Daniel M. Petrocelli and Sharon Louise Tomkins of O'Melveny & Myers, Los Angeles, California, for the defendants.

ORDER GRANTING MOTION TO CONSOLIDATE; ORDER GRANTING POLICEMEN AND FIREMEN RETIREMENT SYSTEM OF THE CITY OF DETROIT'S MOTION FOR APPOINTMENT AS LEAD
PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL

BAIRD, District J.

I. INTRODUCTION
*1 In a series of related class action lawsuits, investors who purchased or otherwise acquired common stock of Defendant Guess?, Inc. ("Guess") within a certain specified period allege violations of sections 10(b) and 20(a) of the Securities Exchange Act.

Class members 5611 Tonnelle Avenue Corporation and Suresh Nanwani bring a motion to consolidate all of the foregoing related cases. In addition, The Policemen and Firemen Retirement System of the City of Detroit ("Detroit" or "Proposed Lead Plaintiff") brings a motion to be appointed Lead Plaintiff pursuant to section 21D(a)(3)(B) of the Securities Exchange Act of 1934, and for approval of its choice of counsel as Lead Counsel in the action. The Court will consider both motions in this Order.

II. FACTUAL AND PROCEDURAL BACKGROUND
Presently pending before this Court are eight related securities class action lawsuits against Defendants Guess, Maurice Marciano, Armand Marciano, Paul Marciano, and Brian Fleming ("Defendants"). [FN1] The complaints in these various actions allege that, between February 14, 2000 and January 26, 2001 (the "Class Period"), Defendants disseminated a series of false and misleading statements concerning Guess' operations and financial performance. See Compl. in Osher v. Guess, Inc. ("Osher Complaint"), P2. As a result of Defendants' conduct, Guess shares have purportedly lost 89% of their value, thereby causing investors to lose, in the aggregate, hundreds of millions of dollars. See id. at P5.

> FN1. The various class actions are captioned as follows: (1) *Osher, et al. v. Guess, Inc., et al.*, 2001 U.S. Dist. LEXIS 6057, CV-01-871; (2) Nuckols, et al. v. Guess Inc., et al., CV-01-979; (3) Dreyfus, et al. v. Guess, Inc., et al., CV-01-996; (4) Sloan, et al v. Guess, Inc., et al., CV-01-1114; (5) Byrd, et al., v. Guess, Inc. et al., CV-01-1413; (6) Liska, et al v. Guess, Inc., et al., CV-01-1502; (7) Wegman, et al. v. Guess, Inc. et al., CV-01-1724; and (8) Gindi, et al. v. Guess, Inc et al., CV-01-1733.

Based on the foregoing, Plaintiffs in the various actions assert the following claims: (1) violation of section 10(b) of the Exchange Act and SEC Rule 10b-5 promulgated thereunder; and (2) violation of section 20(a) of the Exchange Act. See id. at PP59-67.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                   Page 2
2001 WL 861694 (C.D.Cal.), Fed. Sec. L. Rep. P 91,429
**(Cite as: 2001 WL 861694 (C.D.Cal.))**

Class members 5611 Tonnelle Avenue Corporation ("Tonnelle") and Suresh Nanwani ("Nanwani") bring a motion to consolidate all of the foregoing related cases, as well as any subsequently filed cases that relate to the same subject matter as the consolidated action. [FN2]

> FN2. The parties in the various related cases have stipulated to the following schedule, should the Court grant the motion to consolidate: Lead Counsel shall file a Consolidated Complaint no later than 60 days following the appointment of lead plaintiff and lead counsel; Defendants shall file any motion to dismiss no later than 45 days after service of the Consolidated Complaint; Plaintiff shall have 30 days to file an opposition; Defendants shall have 14 days thereafter to file a reply; and Plaintiff shall file any motion for class certification no earlier than 60 days after Defendants have answered the Consolidated Complaint. See e.g. April 4, 2001 Stipulation and Order Re: Defendant's Time to Respond to Complaint and Class Certification, filed in the Osher action.

The Policemen and Firemen Retirement System of the City of Detroit ("Detroit") brings a motion requesting appointment as Lead Plaintiff in the Osher action and in all class actions subsequently consolidated herewith. See Not. of Mot. at 2. Detroit also seeks approval of its choice of counsel, the law firm of Bernstein, Litowitz, Berger & Grossman LLP, as Lead Counsel for the class. [FN3]

> FN3. Class members Nanwani and Tonnelle filed a similar motion for appointment as Lead Plaintiff and Lead Counsel. However, on April 16, 2001, these class members withdrew their motion and filed a statement of non-opposition to Detroit's motion. No other class members have filed an opposition to Detroit's motion.

On April 13, 2001, Defendants filed a "Response" to Detroit's motion, wherein they stated that they "take no position in support of or in opposition to" the appointment of Detroit as Lead Plaintiff. See Def.'s Resp. at 2, P2. Defendants did, however, "specifically reserve the right to challenge any subsequent motion for class certification." Id. [FN4] Defendant's Response also states that they do not oppose Tonnelle's and Nanwani's motion to consolidate the actions. See id. at P1.

> FN4. Defendant's position concerning Detroit's motion for appointment as lead plaintiff would, in any event, carry little weight because only members of the plaintiff class may offer evidence in opposition to such a motion. See § 15 U.S.C. 78u-4 (a)(3)(B)(iii)(II); *Greebel v. FTP Software, Inc.*, 939 F.Supp. 57, 60-61 (D.Mass.1996). As to the motion's impact on a subsequent motion for class certification, courts have noted that "the determination of lead plaintiff and lead counsel at this stage does not preclude revisiting the issue upon consideration of a motion for class certification." *Fischler v. AmSouth Corp.*, 176 F.R.D. 583, 1997 WL 118429, *2 (M.D.Fla.1997)(citing *Greebel*, 939 F.Supp. at 61.)

### III. ANALYSIS
Where multiple putative class actions assert "substantially the same claim," and any party seeks to consolidate the actions, the Court's determination as to consolidation must precede its appointment of a lead plaintiff for the consolidated actions. See 15 U.S.C. § 78u-4 (a)(3)(B)(ii); *Takeda v. Turbodyne Technologies, Inc.*, 67 F.Supp.2d 1129, 1132 (N.D.Cal.1999). As such, the Court will consider the motion to consolidate before considering Detroit's motion for appointment as Lead Plaintiff.

### A. CONSOLIDATION OF THE ACTIONS
*2 Federal Rule of Civil Procedure 42 provides: "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters in issue in the actions; it may order all the actions

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                                Page 3
2001 WL 861694 (C.D.Cal.), Fed. Sec. L. Rep. P 91,429
**(Cite as: 2001 WL 861694 (C.D.Cal.))**

consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary cost or delay." See Fed.R.Civ.P. 42(a). In addition, The Private Securities Litigation Reform Act of 1995 ("Reform Act") dictates that consolidation should occur where the various securities actions assert "substantially the same claim." § *15 U.S.C. 78u-4* (a)(3)(B)(ii).

In deciding whether to consolidate actions, "a court must balance the savings of time and effort consolidation will produce against any inconvenience, delay, confusion, or prejudice that may result." *Takeda, 67 F.Supp.2d at 1133* (citing *Burrus v. Turnbo, 743 F.2d 693, 694,* (9th Cir.1984)).

Here, class members seek consolidation of the eight pending actions, and any subsequent actions related to the same subject matter filed in this district. Having reviewed the complaints in the eight separate actions, the Court concludes that they all involve virtually identical claims. The complaints involve substantially the same Class Period, with only minor variations. See *Takeda, 67 F.Supp.2d at 1133* ("Courts have generally held that differing class periods alone will not defeat consolidation or create a conflict."). In addition, all of the complaints assert violations of sections 10(b) and 20(a) of the Exchange Act, based upon identical allegations of misrepresentations and omissions on the part of Defendant Guess. Finally, all of the same parties are named as Defendants in each of the complaints. Thus, the Court concludes that consolidating these cases for all purposes will be the most efficient solution, and will ease the litigation burden on all parties involved. See *In re Microstrategy Inc. Sec. Litig., 110 F.Supp.2d 427, 431 (E.D.Va.2000)* ( "consolidation is often warranted where multiple securities fraud class actions 'are based on the same 'public statements and reports.' ")(quoting *Werner v. Satterlee Stephens, Burke & Burke, 797 F.Supp. 1196, 1211 (S.D.N.Y.1992))*. As the parties have not identified any countervailing inconvenience, delay, confusion, or prejudice, the Court grants the motion to consolidate the actions.

B. APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL
Having concluded that consolidation is appropriate, the Court now turns to the appointment of lead plaintiff and lead counsel in the consolidated action.

1. LEAD PLAINTIFF
The Private Securities Litigation Reform Act of 1995 ("Reform Act") sets forth the procedure for appointment of lead plaintiff in class actions brought under federal securities laws. See generally *15 U.S.C. § 78u-4*. First, notice of the class action must be published "in a widely circulated national business-oriented publication or wire service" within 20 days following the filing of the class action complaint. See *15 U.S.C. § 78u-4* (a)(3)(A)(I) . If more than one action on behalf of a class asserting substantially the same claim is filed, the Reform Act only requires the plaintiff in the first-filed action to publish the notice. See § *15 U.S.C. 78u-4* (a)(3)(A)(ii). Second, any member of the purported class that wishes to seek appointment as lead plaintiff must file a motion with the court no later than 60 days from the date on which the notice was published. See id.

*3 Here, notice of the Osher action was published on the Business Wire on January 31, 2001, well within 20 days following the January 30, 2001 filing of the action. See Detroit's Ex. C. As such, the first procedural requirement has been satisfied. See *Takeda, 67 F.Supp.2d at 1134* (notice posted on the Business Wire sufficient under Reform Act); *Sherleigh Associates LLC v. Windmere-Durable Holdings, Inc., 184 F.R.D. 688 (1999)* (same). In addition, the instant motion for appointment as Lead Plaintiff was filed on March 30, 2001, which falls within the 60 day deadline established by the Reform Act. As such, the instant motion is procedurally proper.

Turning to the substance of the motion, the Reform Act directs the Court to appoint the "most adequate plaintiff" to serve as lead plaintiff. See *15 U.S.C. § 78u-4* (a)(3)(B)(iii)(I). The "most adequate plaintiff" is one "most capable of adequately representing the interests of class members." Id. The Reform Act further instructs the Court to adopt a presumption that:

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 4
2001 WL 861694 (C.D.Cal.), Fed. Sec. L. Rep. P 91,429
**(Cite as: 2001 WL 861694 (C.D.Cal.))**

the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that--
(aa) has either filed the complaint or made a motion in response to a notice under subparagraph (A)(i);
(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.
See *15 U.S.C. § 78u-4* (a)(3)(B)(iii)(I). "By emphasizing financial stake, the Reform Act establishes a preference that sophisticated institutional investors direct the course of securities cases. " *Takeda, 67 F.Supp.2d at 1135.* See also *Ravens v. Iftikar, 174 F.R.D. 651, 661 (N.D.Cal.1997)* ("The Reform Act affords large, sophisticated institutional investors a preferred position in securities class actions ...").

Here, as a public pension fund with assets purportedly in excess of $ 3 billion, see Detroit's Ex. B. P2, Detroit is the type of large institutional investor preferred by the Reform Act. In addition, Detroit satisfies the three statutory prerequisites set forth above, rendering it the presumptive "most adequate plaintiff" to serve as lead plaintiff in the action. Detroit's filing of the instant motion satisfies the first statutory requirement. As to the second requirement, Detroit has provided evidence, uncontroverted by other class members, that its purported financial loss of $ 1.8 million gives it "the largest financial interest in the relief sought by the class." See Ex. A (setting forth Detroit's purchases of Guess shares); Detroit's Mot. at 14, n. 6. (setting forth Detroit's loss calculation).

Under the third statutory requirement, the Court must determine whether Detroit "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." See *15 U.S.C. § 78u-4* (a)(3)(B)(iii)(I). On a motion for appointment as lead plaintiff, "[a] wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification." *Fischler, 1997 WL 118429,* *2. Instead, the analysis "focuses on the qualities of the class representatives enumerated in 23(a)(3) and 23(a)(4), that is, typicality and adequacy." Id.

*4 Under Rule 23's "permissive standards", claims are typical "if they are reasonably coextensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir.1998).* Thus, a representative's claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [is] based on the same legal theory." *Patrykus v. Gomilla, 121 F.R.D. 357, 362 (N.D.Ill.1988)* (quoting H. Newberg, Newberg on Class Actions § 1115(b) (1st Ed.1977)). Here, Detroit's claims against Defendants are premised on the same allegations of misconduct pertaining to Guess stocks as those of the remaining class members in the consolidated action. In addition, all class members seek recovery under the same provisions of the Exchange Act. As such, for the purposes of this motion, the Court concludes that the typicality requirement is satisfied.

The proposed lead plaintiff's representation is 'adequate' within the meaning of Rule 23 if "counsel for the class is qualified and competent, the representative's interests are not antagonistic to the interests of absent class members, and it is unlikely that the action is collusive." *Takeda, 67 F.Supp.2d at 1137* (citing In re Northern Dist., of Cal. Dalkon Shield IUD Prod. Liab. Litig.; *693 F.2d 847, 855 (9th Cir.1982)).* Here, remaining class members present no evidence concerning the lack of competency of Detroit's counsel. In addition, Detroit's interests appear to be aligned with remaining class members as it has allegedly suffered the same type of harm, and its claims present similar questions of law and fact. Finally, Detroit has a sufficient interest in the outcome of the case to ensure vigorous advocacy, because it asserts losses of approximately $ 1.8 million.

Based on the foregoing, Detroit is presumptively "the most adequate plaintiff" to serve as lead plaintiff in the consolidated action. Remaining class members present no evidence to rebut the presumption. As such, the Court grants Detroit's

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 5
2001 WL 861694 (C.D.Cal.), Fed. Sec. L. Rep. P 91,429
**(Cite as: 2001 WL 861694 (C.D.Cal.))**

motion for appointment as lead plaintiff.

### 2. LEAD COUNSEL

The Reform Act provides that, once the court has appointed a lead plaintiff, that plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." *15 U.S.C. § 78u-4* (a)(3)(B)(v). A court may reject the lead plaintiff's choice only if it is necessary to protect the interests of the class." *15 U.S.C. § 78u-4* (a)(3)(B)(iii)(II)(aa). Here, Detroit has selected the law firm of Bernstein, Litowitz, Berger & Grossman LLP, as lead counsel for the class. As evidenced by the firm's resume, the law firm has experience in litigating complex actions, and has prosecuted securities fraud class actions. See Ex. D (Firm Resume). Thus, the Court approves Detroit's selection of the firm as lead counsel.

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the motion to consolidate. The terms governing the consolidated action are more fully set forth in the accompanying Order Consolidating Related Cases. The Court also GRANTS the Policemen and Firemen Retirement System of the City of Detroit's motion to be appointed as Lead Plaintiff, and APPROVES Detroit's selection of the law firm of Bernstein, Litowitz, Berger & Grossman LLP as Lead Counsel. Finally, the Court ORDERS the parties to comply with the Stipulation and Order Re: Defendant's Time to Respond to Complaint and Class Certification, that was entered in the Osher action on the April 4, 2001.

*5 IT IS SO ORDERED.

2001 WL 861694 (C.D.Cal.), Fed. Sec. L. Rep. P 91,429

**Motions, Pleadings and Filings (Back to top)**

- 2:01CV00871 (Docket)
                                (Jan. 30, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.